UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AMERICAN DREW; AMERICAN OF MARTINSVILLE; BASSETT FURNITURE INDUSTRIES INC.; CAROLINA FURNITURE WORKS, INC.; CENTURY FURNITURE LLC D/B/A CENTURY FURNITURE INDUSTRIES; HARDEN FURNITURE INC.; JOHNSTON TOMBIGBEE FURNITURE MFG. CO.; KINCAID FURNITURE COMPANY INC.; L & J G STICKLEY, INC.; LA-Z-BOY CASEGOODS, INC.; LEA INDUSTRIES; MJ WOOD PRODUCTS, INC.; MOBEL INC.; PERDUES INC. D/B/A PERDUE WOODWORKS INC.; SANDBERG FURNITURE MFG. CO., INC.; STANLEY FURNITURE COMPANY, INC.; T COPELAND AND SONS, INC.; TOM SEELY FURNITURE LLC; VAUGHAN BASSETT FURNITURE COMPANY, INC.; VERMONT QUALITY WOOD PRODUCTS, LLC; WEBB FURNITURE ENTERPRISES, INC., <br><br>        Plaintiffs,<br>v.<br>UNITED STATES OF AMERICA; KEVIN K. McALEENAN, ACTING COMMISSIONER OF CUSTOMS;<br>and<br>U.S. CUSTOMS AND BORDER PROTECTION,<br><br>        Defendants. | Court No. 17-00086 |

## COMPLAINT

1. By this action, plaintiffs seek a remedy for Customs' failure to include certain interest earned on antidumping duties under 19 U.S.C. § 1505(d) in distributions made to "affected domestic producers" under the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA"), 19 U.S.C. §1675c (repealed, subject to savings provision). Section 1505(d) requires Customs to deposit into special accounts certain "antidumping or countervailing duties (*including interest earned* on such duties) that are assessed after the effective date of" the CDSOA, and to "distribute all funds (including *all interest earned* on the funds) from assessed

duties . . . to affected domestic producers" at annual intervals. 19 U.S.C. §§ 1675c(e)(2) and (d)(3) (emphasis added).

2. Each plaintiff is, and has been determined by Customs to be, or is a successor to, an "affected domestic producer" entitled to receive CDSOA distributions under the antidumping order on imports of wooden bedroom furniture ("WBF") from China (the "WBF antidumping order") with respect to one or more of the federal fiscal years from FY2005 through FY2016, as set forth in **Exhibit A** of this Complaint.

## JURISDICTION

3. This court has exclusive jurisdiction over this action under 28 U.S.C. § 1581(i), because the claims asserted herein arise out of the CDSOA, which is a law of the United States providing for the administration and enforcement of duties on the importation of merchandise for reasons other than the raising of revenue.

## BACKGROUND

### *2000: Enactment of the CDSOA*

4. In October 2000, Congress enacted Public Law 106-387, 114 Stat. 1549 (Oct. 28, 2000), Title X of which added the CDSOA by inserting it as a new section (section 754) of Title VII of the Tariff Act of 1930 (19 U.S.C. §§ 1671 *et seq.*).

5. In enacting the CDSOA, Congress provided that it "shall apply with respect to all antidumping and countervailing duty assessments made on or after October 1, 2000." Pub. L. 106-387 at § 1003(c).

6.  As enacted, the CDSOA required Customs to "establish in the Treasury of the United States a special account with respect to" each active antidumping or countervailing duty ("AD/CVD") order and to "deposit into the special accounts, all antidumping or countervailing duties (*including interest earned on such duties*) that are assessed after the effective date" of the CDSOA "under the antidumping order or finding or the countervailing duty order with respect to which the account was established." 19 U.S.C. §§ 1675c(e)(1) & (2) (emphasis added).

7.  The CDSOA provides that "affected domestic producers" desiring a distribution from a "special account" must file a certification with Customs, following publication by Customs of an annual notice in the *Federal Register*. 19 U.S.C. § 1675c(d)(2).

8.  Customs is required to "distribute all funds (*including all interest earned on the funds*) from assessed duties received in the preceding fiscal year to affected domestic producers based on the certifications." 19 U.S.C. § 1675c(d)(3) (emphasis added).

9.  The CDSOA mandates that "{s}uch distribution shall be made not later than 60 days after the first day of a fiscal year from duties assessed during the preceding fiscal year." 19 U.S.C. § 1675c(c).

10.  Congress repealed the CDSOA in 2005, but under terms that still required continued distributions, under the same terms as originally enacted, of duties and interest "on entries of goods made and filed before October 1, 2007." Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 7601, 120 Stat. 4, 154-155 (Feb. 8, 2006).

### *Customs' Unlawful Practices*

11.  Following enactment of the CDSOA, Customs has published annual reports pursuant to 19 C.F.R. § 159.64(g), stating the total amounts collected and distributed under each

AD/CVD order each year. None of those reports has separately identified the portion of the totals, if any, derived from interest earned on the duties.

12.     Since the effective date of the CDSOA, Customs had not published, or otherwise made available or accessible to any plaintiff, any data on CDSOA collections and distributions sufficient to separately identify the interest collected or paid under the WBF Order in any specific year, except as described herein.

13.     On July 15, 2016, a group of affected domestic producers under the antidumping order on honey from China (A-570-863) filed a complaint in this Court alleging that Customs had failed to include interest earned on antidumping duties under Section 1505a(d) in distributions made to affected domestic producers under the CDSOA. *See Adee Honey Farms, et al. v. United States*, CIT No. 1:16-cv-00127 (Complaint July 15, 2016), as amended (First Amended Complaint Feb. 2, 2017). The *Adee Honey Farms* Plaintiffs recounted a series of events that provided notice to them in 2014, but not notice to plaintiffs in this action, that Customs was not distributing the total amounts collected under the antidumping order on honey from China. *Adee Honey Farms* First Amended Complaint at ¶¶ 14-21. Based on these events, the *Adee Honey Farms* Complaint alleged that Customs explained in a private conversation that "when Customs receives a delinquent payment, it applies the payment first to 'delinquency interest' imposed under 19 U.S.C. § 1505(d)" and that "in Customs' view, delinquency interest under 19 U.S.C. § 1505(d) is not within the scope of the CDSOA's reference to 'all interest' {in the CDSOA}." *Adee Honey Farms* First Amended Complaint at ¶ 19. Affected domestic producers under the antidumping orders on freshwater crawfish tail meat from China, fresh garlic from China, and certain preserved mushrooms from China filed similar complaints on the same day. *A&S Crawfish, et al. v. United States*, Case No. 1:16-cv-000131; *Christopher Ranch, LLC,*

*et al. v. United States*, Case No. 1:16-cv-00129; and *Monterey Mushrooms, Inc., et al. v. United States,* Case No. 1:16-cv-00130.

### *2016: Congress Reiterates That "All" Means "All"*

14.     Before *Adee Honey Farms* filed its Complaint, the CDSOA was amended by Section 605 of the Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. 114-125 (Feb. 24, 2016), to specifically direct Customs to include various types of interest, including delinquency interest, in CDSOA distributions, to the extent that such interest was received by the United States on or after October 1, 2014.

15.     The 2016 amendment was not an expansion of the CDSOA's scope regarding interest but was instead enacted to correct Customs' misreading of it, as evidenced by Senator John Thune's comments on the Senate floor:

> Duties collected on dumped imports and all interest on those duties from 2000 to 2007 were to be paid to the injured domestic producers to allow them to reinvest and rebuild. For reasons that defy simple explanation, *CBP ignored the direction of the statute* to pay all interest to producers and instead deducted some types of interest from payments to producers. . . . This practice defies the plain language of the statute and cost domestic producers tens of millions of dollars over the years.
>
> During the Finance Committee markup of this legislation, Senator Grassley, Senator Nelson, and I offered an amendment which is included in this conference report that *corrects CBP's misreading of the law*. This is an important victory for honey, crawfish, garlic, and mushroom that have suffered from Chinese dumping and CBP's unfounded practice.

Congressional Record, Feb. 11, 2016, at S843 (emphasis added).

16.     Prior to reviewing the *Adee Honey Farms* Complaint, and alternatively, information concerning the 2016 legislative amendment, plaintiffs did not know, and could not have known, of any specific instance in which Customs had declined to distribute, under the CDSOA, delinquency interest earned on AD/CVD duties.

## Count 1:

**Failure to Distribute Funds Paid by Sureties As a Prerequisite to Litigation**

17.    The allegations of paragraphs 1 - 16 are hereby incorporated by reference as if restated in full.

18.    Prior to commencing an action in this court under 28 U.S.C. § 1581(a), a surety on a bond securing payment of AD/CVD duties is first required to pay to Customs "all liquidated duties, charges, or exactions," up to "the sum of any bond related to each entry included in the denied protest." 28 U.S.C. § 2637(a). Hartford Fire Insurance Company or its affiliates (collectively or severally, "Hartford") secured antidumping liability on certain entries covered by the WBF antidumping order.

19.    Since 2008, the following actions have been commenced in this Court by Hartford under 28 U.S.C. § 1581(a) with respect to its liability on bonds securing payment of antidumping duties on imports of wooden bedroom furniture from China which were entered after the effective date of the CDSOA and before October 1, 2007:

    1:08-cv-00163-DCP
    1:11-cv-00346-N/A
    1:11-cv-00347-N/A
    1:11-cv-00359-RKE
    1:11-cv-00363-N/A
    1:11-cv-00387-N/A
    1:11-cv-00419-DCP
    1:11-cv-00434-DCP
    1:11-cv-00435-N/A
    1:11-cv-00437-N/A
    1:11-cv-00441-N/A
    1:11-cv-00488-N/A
    1:11-cv-00489-RKE
    1:11-cv-00490-RKE
    1:11-cv-00492-RKE
    1:11-cv-00495-LMG
    1:11-cv-00499-RKE
    1:11-cv-00501-N/A

      1:11-cv-00502-N/A
      1:11-cv-00503-DCP
      1:12-cv-00160-N/A

20.    Upon information and belief, all or part of the payments made by Hartford to Customs as a prerequisite to the commencement of each of the above actions has been treated by Customs as delinquency interest under 19 U.S.C. § 1505(d); and such amounts were neither fully deposited into the CDSOA special account for the WBF antidumping order nor would be under Customs' current policy with respect to delinquency interest.

21.    Customs was, and remains, required by law to deposit, into the CDSOA special account for WBF antidumping order, all such amounts received from Hartford.

22.    Customs was, and remains, required by law to include all such amounts received from Hartford in its CDSOA distributions to affected domestic producers under the WBF antidumping order, including each of the plaintiffs, based on their *pro rata* shares of total certified qualifying expenditures thereunder.

23.    Customs' failure to deposit and distribute such amounts received from Hartford constitutes the unlawful withholding of agency action, or alternatively, was agency action that was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706.

**Count 2:**

**Failure to Distribute Interest Received In the
Ordinary Course of Bill Settlement Without Litigation**

24.    The allegations of paragraphs 1 - 23 are hereby incorporated by reference as if restated in full.

25.    Upon information and belief, since the effective date of the CDSOA, Customs has received numerous payments of delinquency interest pursuant to 19 U.S.C. § 1505(d) on

antidumping duties owed under the WBF antidumping duty order in settlement of bills to importers and sureties that may or may not have been litigated and were settled and/or paid in the ordinary course.

26. The precise dates and amounts of such receipts by Customs are unknown to plaintiffs, because Customs has not released sufficient data to determine them and the information is known only to Customs and the parties who paid the bills.

27. Upon information and belief, such receipts were neither fully deposited into the CDSOA special account for the WBF antidumping order nor fully distributed to eligible affected domestic producers under the CDSOA.

28. Customs was, and remains, required by law to deposit, into the CDSOA special account for the WBF antidumping order, all such receipts.

29. Customs was, and remains, required by law to include all such receipts in its CDSOA distributions to affected domestic producers under the WBF antidumping order, including each of the plaintiffs, based on their *pro rata* shares of total certified qualifying expenditures thereunder.

30. Customs' failure to deposit and distribute such receipts constitutes the unlawful withholding of agency action, or alternatively, was agency action that was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706.

## RELIEF REQUESTED

31. WHEREFORE, plaintiffs request that this court:

    a. Order, adjudge, and decree that the CDSOA's references to "interest earned" in 19 U.S.C. §§ 1675c(e)(2) and (d)(3) include delinquency interest under 19 U.S.C. § 1505(d);

    b. Order, adjudge, and decree, with respect to payments made by Hartford to Customs as a prerequisite to the commencement of the above-described actions under 28 U.S.C. § 1581(a) regarding Hartford's liability on bonds securing payment of antidumping duties on imports of WBF from China, that Customs is required by law to include all such amounts received from Hartford (including amounts characterized by Customs as delinquency interest under 19 U.S.C. § 1505(d)) in its CDSOA distributions to affected domestic producers under the WBF antidumping order, including each of the plaintiffs, based on their *pro rata* shares of total certified qualifying expenditures thereunder, for the federal fiscal year in which Customs received such payment;

    c. Order, adjudge, and decree, with respect to payments of delinquency interest pursuant to 19 U.S.C. § 1505(d) on antidumping duties owed under the WBF antidumping duty order in settlement of bills to importers and sureties that may or may not have been litigated and were settled and/or paid in the ordinary course, that Customs is required by law to include all such payments in its CDSOA distributions to affected domestic producers under the WBF antidumping order, including each of the plaintiffs, based on their *pro rata* shares of total certified qualifying expenditures thereunder, for the federal fiscal year in which Customs received such payment;

  d. Order, adjudge, and decree that plaintiffs are entitled to an accounting by Customs, by Fiscal Year, of all delinquency interest not distributed to plaintiffs under the WBF antidumping order.

  e. Order, adjudge, and decree that plaintiffs are entitled to an award, pursuant to 28 U.S.C. § 2643(a), of equitable interest to the extent necessary to compensate plaintiffs for Customs' failure to distribute the foregoing amounts within the time required by law pursuant to 19 U.S.C. § 1675c(c); and

  f. Order such other or additional relief as the court deems appropriate.

          Respectfully submitted,

Dated: April 18, 2017

         */s/ J. Michael Taylor*
         J. Michael Taylor
         jmtaylor@kslaw.com
         Jeffrey M. Telep
         jtelep@kslaw.com
         Stephen A. Jones
         sajones@kslaw.com
         Daniel L. Schneiderman
         dschneiderman@kslaw.com

         KING & SPALDING LLP
         1730 Pennsylvania Avenue, NW
         Washington, DC  20006
         (202) 737-0500

         *Counsel for Plaintiffs*

# EXHIBIT A

Qualifying Domestic Producers for CDSOA Distributions by Year

| Company Name | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AMERICAN DREW | X | | | | | | | | | | | |
| AMERICAN OF MARTINSVILLE | X | X | X | X | X | | | | | | | |
| BASSETT FURNITURE INDUSTRIES INC | X | X | X | X | X | X | X | X | X | X | X | X |
| CAROLINA FURNITURE WORKS INC | X | X | X | X | X | X | X | X | X | X | X | X |
| CENTURY FURNITURE INDUSTRIES | X | X | X | X | X | X | X | X | X | X | X | X |
| HARDEN FURNITURE INC | X | X | X | X | X | X | X | X | X | | X | X |
| JOHNSTON TOMBIGBEE FURNITURE MFG CO | | X | X | X | X | X | X | X | X | X | X | X |
| KINCAID FURNITURE COMPANY INC | X | X | X | X | X | X | X | X | X | X | X | X |
| L AND J G STICKLEY INC | X | X | X | X | X | X | X | X | X | X | X | X |
| LEA INDUSTRIES | X | X | X | X | X | X | X | X | X | | | |
| MJ WOOD PRODUCTS INC | X | X | X | X | X | X | X | X | X | X | X | X |
| MOBEL INC | X | X | X | X | X | X | X | X | X | X | | |
| PERDUES INC DBA PERDUE WOODWORKS INC | X | X | X | X | X | X | X | X | X | X | X | X |
| SANDBERG FURNITURE MFG CO INC | X | X | X | X | X | X | X | X | X | X | X | X |
| STANLEY FURNITURE COMPANY INC | X | X | X | X | X | X | X | X | X | X | X | X |
| T COPELAND AND SONS INC | X | X | X | X | X | X | X | X | X | | X | X |
| TOM SEELY FURNITURE | X | X | X | X | X | X | X | X | | X | X | X |
| VAUGHAN BASSETT FURNITURE COMPANY | X | X | X | X | X | X | X | X | X | X | X | X |
| VERMONT QUALITY WOOD PRODUCTS | X | X | X | X | X | X | X | X | | | | |
| WEBB FURNITURE ENTERPRISES INC | X | | | | | | | | | | | |

Source: https://www.cbp.gov/trade/priority-issues/adcvd/continued-dumping-and-subsidy-offset-act-cdsoa-2000