Slip Op. No. 22-61

## UNITED STATES COURT OF INTERNATIONAL TRADE

| |
|---|
| **AMERICAN DREW, et al.,** |
| Plaintiffs, |
| v. |
| **UNITED STATES, et al.,** |
| Defendants. |

Before: Timothy C. Stanceu, Judge

Court No. 17-00086

### OPINION AND ORDER

[Denying motion for reconsideration of court's previous ruling dismissing some claims as time-barred by the statute of limitations]

Dated: June 8, 2022

*J. Michael Taylor*, King & Spalding LLP, of Washington, D.C., for plaintiffs American Drew, American of Martinsville, Basset Furniture Industries Inc., Carolina Furniture Works, Inc., Century Furniture LLC d/b/a Century Furniture Industries, Harden Furniture Inc., Johnston Tombigbee Furniture Mfg. Co., Kincaid Furniture Company Inc., L & J G Stickley, Inc., La-Z-Boy Casegoods, Inc., Lea Industries, MJ Wood Products, Inc., Mobel Inc., Perdues Inc. d/b/a Perdue Woodworks Inc., Sandberg Furniture Mfg. Co., Inc., Stanley Furniture LLC (successor to Stanley Furniture Company, Inc.), T Copeland and Sons, Inc., Tom Seely Furniture LLC, Vaughan Bassett Furniture Company, Inc., Vermont Quality Wood Products, LLC, and Webb Furniture Enterprises, Inc.  With him on the submissions were *Jeffrey M. Telep*, *Jeremy M. Bylund*, and *Neal J. Reynolds*.

*Beverly A. Farrell*, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for defendants United States, U.S. Customs and Border Protection, and Chris Magnus, Commissioner of U.S. Customs and Border Protection.  With her on the submission were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Justin R. Miller*, Attorney-in-Charge, International Trade Field Office.  Of counsel were *Suzanna Hartzell-*

*Ballard* and *Jessica Plew*, Office of Assistant Chief Counsel, U.S. Customs and Border Protection, of Indianapolis, Indiana.

Stanceu, Judge: Plaintiffs American Drew, American of Martinsville, Basset Furniture Industries Inc., Carolina Furniture Works, Inc., Century Furniture LLC d/b/a Century Furniture Industries, Harden Furniture Inc., Johnston Tombigbee Furniture Mfg. Co., Kincaid Furniture Company Inc., L & J G Stickley, Inc., La-Z-Boy Casegoods, Inc., Lea Industries, MJ Wood Products, Inc., Mobel Inc., Perdues Inc. d/b/a Perdue Woodworks Inc., Sandberg Furniture Mfg. Co., Inc., Stanley Furniture LLC, T Copeland and Sons, Inc., Tom Seely Furniture LLC, Vaughan Bassett Furniture Company, Inc., Vermont Quality Wood Products, LLC, and Webb Furniture Enterprises, Inc. are U.S. producers of wooden bedroom furniture.  Each qualified as an "affected domestic producer" ("ADP") entitled to receive certain cash distributions under the Continued Dumping and Subsidy Offset Act of 2000 (the "CDSOA" or "Byrd Amendment"), 19 U.S.C. § 1675c.[1]  Under the Byrd Amendment, ADPs were eligible to receive annual "continued dumping and subsidy offsets" ("distributions") resulting from duties assessed upon imported merchandise under antidumping duty ("AD") and countervailing duty ("CVD") orders.

---

[1] All citations to the United States Code are to the 2012 edition unless otherwise noted, except for citations to the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA"), which are citations to 19 U.S.C. § 1675c as in effect prior to repeal.  All citations to the Code of Federal Regulations are to the 2014 edition unless otherwise noted.

The CDSOA directed the U.S. Customs Service (now U.S. Customs and Border

Protection ("Customs" or "CBP")) to include, in the distributions made to ADPs on a

fiscal-year basis, interest the government earned on assessed antidumping and

countervailing duties.  In this litigation, plaintiffs claim that Customs, while including

in their distributions the interest the government earned pursuant to Section 778(a) of

the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1677g, on underpaid antidumping and

countervailing duties that was assessed at liquidation ("Section 1677g interest"),

unlawfully failed to include interest collected according to Section 505(d) of the Tariff

Act, 19 U.S.C. § 1505(d).  This interest, which can be identified as "Section 505(d)"

interest or "delinquency" interest, accrues if the importer of record or its surety is

delinquent in paying the combined amount of all duties, fees, and interest that Customs

determined at liquidation to be owing on an entry of imported merchandise.

Before the court is Plaintiffs' Motion for Judgment on the Agency Record and for

Reconsideration (May 24, 2021), ECF No. 81, on behalf of all plaintiffs, pursuant to

USCIT Rule 56.1 ("Pls.' Mot.").  In this Opinion and Order, the court rules only on the

portion of plaintiffs' motion that seeks reconsideration of the court's June 1, 2020

Opinion and Order, in which the court, granting in part defendants' motion to dismiss,

ruled that certain of plaintiffs' claims were time-barred by the two-year statute of

limitations.  *See American Drew v. United States*, 44 CIT __, __, 450 F. Supp. 3d 1378, 1390

(2020) ("*American Drew I*").  The court denies the motion for reconsideration, reserving

its ruling on the remaining issues addressed in plaintiffs' Rule 56.1 motion.

## I. BACKGROUND

Background on this litigation is presented in this court's prior Opinion and

Order granting defendants' motion to dismiss in part and denying it in part.  *See*

*American Drew I*, 44 CIT at __, 450 F. Supp. 3d at 1380–82.

## II. DISCUSSION

Under USCIT Rule 54(b), "any order or other decision, . . . that adjudicates fewer

than all the claims or the rights and liabilities of fewer than all the parties . . . may be

revised at any time before the entry of a judgment adjudicating all the claims and all the

parties' rights and liabilities."  USCIT R. 54(b).  Plaintiffs urge reconsideration of

*American Drew I*, which dismissed as untimely under the two-year statute of limitations,

28 U.S.C. § 2636(i), plaintiffs' claims seeking delinquency interest on CDSOA

distributions received prior to April 18, 2015.

In *American Drew I*, the court held that the "Final Rule" promulgated by Customs

to implement the CDSOA, *Distribution of Continued Dumping and Subsidy Offset to*

*Affected Domestic Producers*, 66 Fed. Reg. 48,546 (Customs Serv. Sept. 21, 2001) (codified

at 19 C.F.R. §§ 159.61–159.64, 178.2 (2002)) ("*Final Rule*") placed interested parties on

notice of a decision by Customs with respect to the type of interest Customs would

deposit into each "special account," where it would be available for distribution to

ADPs. *American Drew I*, 44 CIT at __, 450 F. Supp. 3d at 1385 ("The court concludes that

19 C.F.R. § 159.64(e), when read together with the preamble language that pertained to

it, provided adequate notice of the agency's decision that any type of interest other than

Section 1677g interest would not be deposited into the special accounts for distribution

to ADPs."). As a result, the court held, the only timely claims of the plaintiffs were

those relating to the application of the Final Rule to their individual CDSOA

distributions occurring during the two years prior to their instituting their actions. *Id.*,

44 CIT at __, 450 F. Supp. 3d at 1389 ("Therefore, those of their claims that accrued

during the two-year period prior to commencement of their actions on April 18, 2017

are timely, and those of their claims that accrued prior to that two-year period are not.")

As a consequence, the court dismissed as time-barred plaintiffs' claims seeking

delinquency interest on any CDSOA distributions received prior to April 18, 2015.

    The Final Rule, in section 159.64(e), provided, specifically, that "statutory interest

charged on antidumping and countervailing duties *at liquidation* will be transferred to

the Special Account, when collected from the importer." *Final Rule*, 66 Fed. Reg. at

48,554 (emphasis added). In *American Drew I*, the court reasoned that "[t]he reference to

statutory interest 'charged' on antidumping and countervailing duties 'at liquidation'

connotes an intent to deposit into the special accounts interest accrued under 19 U.S.C.

§ 1677g, which governs interest on underpaid (and overpaid) antidumping and

countervailing duties that accrues up until liquidation." *American Drew I*, 44 CIT at __,

450 F. Supp. 3d at 1385.  The preamble to the regulation clarified that "only interest

charged on antidumping and countervailing duty funds themselves, pursuant to the

express authority in 19 U.S.C. § 1677g, will be transferred to the special accounts and be

made available for distribution under the CDSOA."  *Final Rule*, 66 Fed. Reg. at 48,550.

Because interest accrues according to 19 U.S.C. § 1677g from the time of required

deposit of estimated antidumping or countervailing duties up until the liquidation of

the entry, but not afterward, the court viewed the regulation, as clarified by the

preamble, to constitute definitive notice to interested parties that they would be

receiving interest that accrued in favor of the government under 19 U.S.C. § 1677g and

would not be receiving delinquency interest under 19 U.S.C. § 1505(d).

   In moving for reconsideration of the court's ruling in *American Drew I*, plaintiffs

argue that the court should reverse its decision to dismiss the earlier claims.  Pls.' Mot.

50–57.  Plaintiffs argue that the "recently submitted Administrative Record Supplement

now confirms that CBP is playing an interpretive shell game," *id.* at 50, and that "it

appears that CBP changed its mind about whether to distribute delinquency interest,

and reflected that decision (if at all) with the word 'only' in the preamble to the final

rule," *id.* at 50–51; *see* Reply in Supp. of Pls.' Rule 56.1 Mot. for J. on the Admin. R. and

for Recons. 33 (Oct. 8, 2021), ECF No. 92 ("Pls.' Reply") ("Agencies are afforded a

presumption of regularity, and Plaintiffs were not required to assume that CBP would

impermissibly use a preamble to change the regulation from one that is consistent with

the CDSOA to one that contradicts it.")  According to plaintiffs:

> This one word, which was tucked away in a non-binding discussion of
> another issue, was insufficient to give Plaintiffs notice of CBP's change in
> position to withhold delinquency interest (which the agency also never
> explained in its final rule).  Plaintiffs therefore could not have challenged
> that decision until they obtained such notice in 2016.

Pls.' Mot. 51.  Contending that "[t]he proposed and final rules are materially the same,"

plaintiffs argue that "CBP's reading hinges entirely on the word 'only,' which appears

only in the *preamble* to the final rule."  *Id*. at 54.

Plaintiffs' argument is unconvincing.  The conclusion that the Final Rule

provided notice of the type of interest to be distributed does not hinge entirely on the

preamble language or the word "only" appearing therein.  The interest identified for

distribution to ADPs in section 159.64(e) of the Final Rule is interest "charged on

antidumping and countervailing duties at liquidation."  19 C.F.R. § 159.64(e).

Delinquency interest accruing under Section 505(d) of the Tariff Act is not charged at

liquidation and can begin to accrue only *from* liquidation.  *See* 19 U.S.C. § 1505(d).  Even

though § 159.64(e) does not expressly state that interest *not* charged at liquidation, i.e.,

delinquency interest, will *not* be added to the Special Accounts, it is unreasonable to

interpret the provision to mean that any interest other than interest charged at

liquidation will be made available for distribution to ADPs.  The preamble, by

informing interested parties that only Section 1677g interest will be made available for

distribution under the CDSOA, removed any remaining doubt.

Based on the supplemented administrative record, Administrative Record

Supplement (Feb. 19, 2021), ECF Nos. 72 (public), 74 (conf.) ("Admin. R. Supp."),[2]

plaintiffs contend that as of the time the agency published its proposed rule for

implementing the CDSOA, on June 26, 2001, Customs had taken the position to

consider ways to distribute delinquency interest but "changed course, apparently

during the time between the proposed rule and the September 21, 2001 final rule" and

decided not to do so.  Pls.' Mot. 53–54 (discussing a February 21, 2001 agency

document, Admin. R. Supp. 511).  "That is the only position of the agency in the

Administrative Record that predates the publication of the proposed rule in June 2001."

*Id.* at 53.  Plaintiffs state, further, that "[a] record document dated August 19, 2001

memorializes a decision to change course, noting that the '{d}ecision has been made that

accrued interest for late payment of bill,' i.e., delinquency interest, 'will not be made

available for disbursement under the Byrd Amendment.'"  *Id.* (citing Admin. R. Supp.

579).  This argument, too, is unavailing.  As plaintiffs themselves acknowledge, the

proposed rule, which they describe as "materially the same" as the final rule, also

informed interested parties that Customs would deposit and distribute "'statutory

interest charged on antidumping and countervailing duties at liquidation.'"  *See* Pls.'

---

[2] All citations in this Opinion and Order are to public documents.

Mot. 54 (quoting *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic*

*Producers,* 66 Fed. Reg. 33,920, 33,926 (proposed June 26, 2001) (to be codified at

19 C.F.R. § 159.61–159.64 (2002)).  Nothing in the proposed rule provided or even

suggested to interested parties that Customs would distribute delinquency interest to

ADPs.  Even if, as plaintiffs argue, Customs contemplated distributing delinquency

interest but "changed course" on that issue before issuing the Final Rule, such a

sequence of events does not signify that Customs ever disclosed to the public a decision

to distribute delinquency interest.  To the contrary, the August 19, 2001 record

document plaintiffs cite shows that Customs made a decision, approximately a month

before publishing the Final Rule, not to do so.  Plaintiffs fail to present a plausible

argument that the September 21, 2001 Federal Register notice announcing the Final Rule

(which included the preamble) was inadequate as public notice of that decision.

Plaintiffs also argue that "CBP's sea change requires more explanation and

process than was given here."  Pls.' Mot. 55.  They reason that "'{t}he question is

whether the notice was adequate to afford interested parties a reasonable opportunity

to participate in the rulemaking process.'"  *Id.* (quoting *MCI Telecomms. Corp. v. FCC,*

57 F.3d 1136, 1142 (D.C. Cir. 1995) (internal quotation marks and citations omitted)).

According to plaintiffs, "[i]t is hard to see how the notice was adequate here given the

timing in the record of CBP's course change" and "[t]here is no way that the

preliminary rule could have prepared interested parties for the CBP's decision to go in

the opposite direction than what CBP was intending when it published the proposed

rule," which "is underscored by the lack of comments on the issue." *Id.* at 55–56.

Again, neither the proposed rule nor the Final Rule informed interested parties that

delinquency interest would be distributed.  The "notice" issue pertaining to accrual of

claims for purposes of the statute of limitations is whether the September 21, 2001

Federal Register notice comprising the Final Rule (which contained § 159.64(e) and the

preamble language), adequately informed prospective plaintiffs that Customs had

decided to distribute only interest charged at liquidation, and not delinquency interest,

to the ADPs.  Plaintiffs confuse that "notice" issue with the issue of whether Customs

afforded interested parties adequate notice and opportunity to comment on the

question of delinquency interest.  While the latter issue may have implications for a

claim that the Final Rule was invalidly promulgated (a claim plaintiffs do not assert in

this litigation, *see* Pls.' Mot. 18–49), only the former is relevant to the time at which

plaintiffs' claims accrued.

### III.  CONCLUSION

Plaintiffs have not put forth a valid reason why the court should vacate or

modify the decision reached in *American Drew I* to dismiss the claims determined to be

untimely.  Therefore, upon considering plaintiffs' motion for reconsideration, all

submissions made herein, and upon due diligence, it is hereby

      **ORDERED** that plaintiffs' motion for reconsideration of the court's ruling in
*American Drew v. United States*, 44 CIT __, 450 F. Supp. 3d 1378 (2020) be, and hereby is,
denied.

                                       /s/ Timothy C. Stanceu
                                       Timothy C. Stanceu, Judge

Dated: June 8, 2022
      New York, New York