# United States Court of Appeals for the Federal Circuit

_____

**ADEE HONEY FARMS, ET AL.,**
*Plaintiffs*

**MONTEREY MUSHROOMS, INC.,**
*Plaintiff-Appellant*

v.

**UNITED STATES, UNITED STATES CUSTOMS AND BORDER PROTECTION, TROY MILLER, ACTING COMMISSIONER OF U.S. CUSTOMS AND BORDER PROTECTION,**
*Defendants-Appellees*

_____

2022-2105

_____

Appeal from the United States Court of International Trade in No. 1:16-cv-00127-TCS, Senior Judge Timothy C. Stanceu.

--------------------------------------------------

**HILEX POLY CO., LLC, SUPERBAG LLC, SUCCESSOR TO SUPERBAG CORP., UNISTAR PLASTICS, LLC, COMMAND PACKAGING, LLC, SUCCESSOR TO GRAND PACKAGING INC., D/B/A COMMAND PACKAGING, ROPLAST INDUSTRIES INC., US MAGNESIUM LLC, SUCCESSOR TO MAGNESIUM CORPORATION OF AMERICA,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES, TROY MILLER, ACTING COMMISSIONER OF U.S. CUSTOMS AND BORDER PROTECTION, UNITED STATES CUSTOMS AND BORDER PROTECTION,**
*Defendants-Appellees*

———————————

2022-2106

———————————

Appeal from the United States Court of International Trade in No. 1:17-cv-00090-TCS, Senior Judge Timothy C. Stanceu.

----------------------------------------------

**AMERICAN DREW, AMERICAN OF MARTINSVILLE, BASSETT FURNITURE INDUSTRIES INC., CAROLINA FURNITURE WORKS, INC., CENTURY FURNITURE LLC, DBA CENTURY FURNITURE INDUSTRIES, HARDEN FURNITURE INC., JOHNSTON TOMBIGBEE FURNITURE MFG. CO., KINCAID FURNITURE CO., INC., L & J G STICKLEY, INC., LA-Z-BOY CASEGOODS, INC., LEA INDUSTRIES, MJ WOOD PRODUCTS, INC., MOBEL INC., PERDUES INC., DBA PERDUE WOODWORKS INC., SANDBERG FURNITURE MFG. CO., INC., STANLEY FURNITURE LLC, SUCCESSOR TO STANLEY FURNITURE CO., INC., T COPELAND AND SONS, INC., TOM SEELY FURNITURE LLC, VAUGHAN-BASSETT FURNITURE COMPANY, INC., VERMONT QUALITY WOOD PRODUCTS, LLC, WEBB FURNITURE ENTERPRISES, INC.,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES, UNITED STATES CUSTOMS
AND BORDER PROTECTION, TROY MILLER,
ACTING COMMISSIONER OF U.S. CUSTOMS AND
BORDER PROTECTION,**
*Defendants-Appellees*

————————————

2022-2114

————————————

Appeal from the United States Court of International Trade in No. 1:17-cv-00086-TCS, Senior Judge Timothy C. Stanceu.

————————————

Decided: July 15, 2024

————————————

ADAM H. GORDON, The Bristol Group PLLC, Washington, DC, argued for plaintiff-appellant Monterey Mushrooms, Inc. Also represented by JENNIFER MICHELE SMITH-VELUZ.

JEREMY MICHAEL BYLUND, King & Spalding LLP, Washington, DC, argued for plaintiffs-appellants American Drew, American of Martinsville, Bassett Furniture Industries Inc., Carolina Furniture Works, Inc., Century Furniture LLC, Command Packaging, LLC, Harden Furniture Inc., Hilex Poly Co., LLC, Johnston Tombigbee Furniture Mfg. Co., Kincaid Furniture Co., Inc., L & J G Stickley, Inc., La-Z-Boy Casegoods, Inc., Lea Industries, MJ Wood Products, Inc., Mobel Inc., Perdues Inc., Roplast Industries Inc., Sandberg Furniture Mfg. Co., Inc., Stanley Furniture LLC, Superbag LLC, T Copeland and Sons, Inc., Tom Seely Furniture LLC, Webb Furniture Enterprises, Inc., Unistar

Plastics, LLC, US Magnesium LLC, Vaughan-Bassett Fur-
niture Company, Inc. and Vermont Quality Wood Products,
LLC.  Also represented by DANIEL SCHNEIDERMAN, JAMES
MICHAEL TAYLOR, JEFFREY MARK TELEP; MARTHA BANNER
BANKS, Atlanta, GA; ISHAM CASON HEWGLEY, IV, Houston,
TX.

    BEVERLY A. FARRELL, International Trade Field Office,
United States Department of Justice, New York, NY, ar-
gued for defendants-appellees.  Also represented by BRIAN
M. BOYNTON, PATRICIA M. MCCARTHY, JUSTIN REINHART
MILLER; SUZANNA KAY HARTZELL-BALLARD, Office of Assis-
tance Chief Counsel, United States Customs and Border
Protection, Indianapolis, IN.

————————————

    Before LOURIE, STOLL, and CUNNINGHAM, *Circuit Judges*.

CUNNINGHAM, *Circuit Judge*.

    This appeal originates from three decisions by the
United States Court of International Trade denying Plain-
tiffs' motions for judgment on the agency record and enter-
ing judgment in favor of the United States, the United
States Customs and Border Protection ("Customs"), and
the Commissioner of Customs (collectively "Appellees" or
"Defendants").  *Adee Honey Farms v. United States*, 582 F.
Supp. 3d 1286, 1299 (Ct. Int'l Trade 2022) ("*Adee Final De-
cision*"); *Hilex Poly Co. v. United States*, 581 F. Supp. 3d
1319, 1331 (Ct. Int'l Trade 2022); *Am. Drew v. United
States*, 579 F. Supp. 3d 1372, 1384 (Ct. Int'l Trade 2022).[1]

————————————

    [1]    The Court of International Trade's decisions in all
three cases (as well as earlier orders discussed below) are
nearly identical in all relevant respects.  *Hilex* and *Ameri-
can Drew* were consolidated before the Federal Circuit
prior to oral arguments.  *Hilex*, No. 2022-2106,

We affirm the Court of International Trade's judgment for
the reasons explained below.

## I. Background

This case concerns the Continued Dumping and Sub-
sidy Offset Act of 2000 ("CDSOA"),[2] which amended the
Tariff Act of 1930. Pub. L. No. 106-387, §§ 1001–1003, 114
Stat. 1549A-1, 1549A-72–75 (codified at 19 U.S.C. § 1675c
(2000) (repealed 2006)). The CDSOA provides for the dis-
tribution of "[d]uties assessed pursuant to a countervailing
duty order, an antidumping duty order, or a finding under
the Antidumping Act of 1921," 19 U.S.C. § 1675c(a), and
"interest earned on such duties," *id.* § 1675c(e)(2), to "af-
fected domestic producers for qualifying expenditures," *id.*
§ 1675c(a). The present dispute concerns the distribution
of interest associated with antidumping and countervailing
duties under the statute.

Under the CDSOA, the Commissioner of Customs
"shall establish . . . a special account with respect to each

---

Consolidation Order. *Adee* and *Hilex* are consolidated by
order issued concurrently with this decision. We refer pri-
marily to the Court of International Trade's decisions in
*Adee* in this opinion.

[2] The CDSOA is also referred to as the Byrd Amend-
ment. *E.g.*, *Adee Final Decision* at 1288. Although the
CDSOA was repealed in 2006, it remains in effect for cer-
tain antidumping and countervailing duties assessed on
entries made before October 1, 2007. *See* Deficit Reduction
Act of 2005, Pub. L. No. 109-171, § 7601, 120 Stat. 4, 154–
55 (2006), *amended by* Claims Resolution Act of 2010, Pub.
L. No. 111-291, § 822, 124 Stat. 3064, 3163, *amended by*
Tax Relief, Unemployment Insurance Reauthorization,
and Job Creation Act of 2010, Pub. L. No. 111-312, § 504,
124 Stat. 3296, 3308. All references to 19 U.S.C. § 1675c
are to the 2000 version of the U.S. Code.

[antidumping order or finding or countervailing duty order]." *Id.* § 1675c(e)(1). The Commissioner of Customs is then required to "deposit into the special accounts, all antidumping or countervailing duties (*including interest earned on such duties*) that are assessed . . . under the antidumping order or finding or the countervailing duty order with respect to which the account was established." *Id.* § 1675c(e)(2) (emphasis added). The statute directs the Commissioner of Customs to "distribute all funds (*including all interest earned on the funds*) from assessed duties received in the preceding fiscal year to affected domestic producers based on the certifications described in paragraph (2)." *Id.* § 1675c(d)(3) (emphasis added).

There are two types of interest under the Tariff Act relevant to this appeal. Section 1677g in the Tariff Act[3] provides for interest payments based on antidumping and countervailing duties finally assessed on imported merchandise. 19 U.S.C. § 1677g. Upon the entry of merchandise into the United States, the importer must deposit "the amount of duties and fees estimated to be payable on such merchandise," *id.* § 1505(a), including any estimated antidumping or countervailing duties, *id.* §§ 1671e(a)(3), 1673e(a)(3). Section 1677g requires refunds on overpayments and the payment of interest on underpayments of estimated antidumping and countervailing duties deposited compared to the duties finally assessed. *Sharp Elecs. Corp. v. United States*, 124 F.3d 1447, 1449 (Fed. Cir. 1997); 19 U.S.C. § 1677g; *see also id.* §§ 1671f, 1673f (explaining that any underpayment of antidumping or countervailing duties is to be collected (or any overpayment refunded) along with § 1677g interest). Under § 1505(b) of the Tariff Act, "[d]uties, fees, and interest determined to be

---

[3]  We refer to all provisions by their section number as codified, rather than their section number within the Tariff Act.

due upon liquidation . . . are due 30 days after issuance of the bill for such payment." 19 U.S.C. § 1505(b). Delinquency interest accrues on any "unpaid balance" that remains after this 30-day payment period. *Id.* § 1505(d). Unlike § 1677g interest, delinquency interest does not apply specifically to antidumping and countervailing duties. The CDSOA did not change these provisions.

In September 2001, Customs published its Final Rule implementing the CDSOA. Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers, 66 Fed. Reg. 48546 (Sept. 21, 2001) ("Final Rule") (codified at 19 C.F.R. pts. 159, 178). In the preamble to the Final Rule, Customs explained that "only interest charged on antidumping and countervailing duty funds themselves, pursuant to the express authority in 19 U.S.C. [§] 1677g, will be transferred to the special accounts and be made available for distribution under the CDSOA." *Id.* at 48550. Customs did not include delinquency interest assessed after liquidation in its distributions under the CDSOA. *Adee Final Decision* at 1292.

Plaintiffs-Appellants are affected domestic producers entitled to receive certain distributions under the CDSOA. *Id.* at 1288. In 2016 or 2017, plaintiffs separately sued Customs in the Court of International Trade under 28 U.S.C. § 1581(i),[4] alleging that the agency acted unlawfully by withholding delinquency interest from distributions under the CDSOA. J.A. 29; J.A. 4267–68; *Hilex* J.A. 130;

---

[4]    Section 1581(i) gives the Court of International Trade exclusive jurisdiction over civil actions against the United States, its agencies, or its officers, arising out of any U.S. law providing for "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B).

*Hilex* J.A. 3710–11.[5]  Plaintiffs alleged Customs' practice of excluding delinquency interest from CDSOA distributions first came to light in 2014.  J.A. 4270–73.

The Court of International Trade issued three key decisions at issue in this appeal in each of the underlying cases.  First, in June 2020, the Court of International Trade granted in part and denied in part the government's motions for failure to state a claim upon which relief can be granted.  *See Adee Honey Farms v. United States*, 450 F. Supp. 3d 1365, 1367 (Ct. Int'l Trade 2020) ("*Adee Partial Dismissal Order*"); *Hilex Poly Co. v. United States*, 450 F. Supp. 3d 1390, 1392 (Ct. Int'l Trade 2020); *Am. Drew v. United States*, 450 F. Supp. 3d 1378, 1380 (Ct. Int'l Trade 2020).  The government asserted "all of plaintiffs' claims are time-barred" based on the applicable two-year statute of limitations, 28 U.S.C. § 2636(i), because the Final Rule— "the agency decision being challenged in this litigation"— was published in September 2001, over a decade before the earliest complaint was filed.  *Adee Partial Dismissal Order* at 1371.  Plaintiffs asserted their claims could not have accrued until Customs' practice of excluding delinquency interest came to light several years later because the Final Rule did not sufficiently inform the public of Customs' decision.  *Id.* at 1374–75.  The Court of International Trade rejected plaintiffs' argument, finding the Final Rule did give adequate notice of Customs' decision.  *Id.* at 1373–74, 1376.  However, the Court of International Trade also determined that under Federal Circuit precedent, a claim for each CDSOA distribution accrues annually.  *Id.* at 1376– 77.  Thus, plaintiffs could challenge the exclusion of delinquency interest from distributions made within the two-year period prior to filing the complaint.  *Id.*  The Court of

---

[5]  "J.A." refers to the joint appendix filed in *Adee*, No. 22-2105, and "*Hilex* J.A." refers to the joint appendix filed in *Hilex*, No. 22-2106.

International Trade accordingly dismissed claims relating to earlier distributions falling outside this two-year period. *Id.* at 1378.

Second, in June 2022, the Court of International Trade denied plaintiffs' motions to reconsider its partial dismissal of claims as time barred. *Adee Honey Farms v. United States*, 577 F. Supp. 3d 1362, 1364 (Ct. Int'l Trade 2022) ("*Adee Reconsideration Order*"); *Hilex Poly Co. v. United States*, 577 F. Supp. 3d 1372, 1373–74 (Ct. Int'l Trade 2022); *Am. Drew v. United States*, 577 F. Supp. 3d 1367, 1368 (Ct. Int'l Trade 2022). Plaintiffs asserted that the administrative record—made available after the earlier decision—showed that Customs "initially intended to distribute delinquency interest" and "changed its mind about including delinquency interest in the CDSOA distributions at some point between the publication of the proposed rule and the Final Rule," but the agency failed to explain or provide notice of this change. *Adee Reconsideration Order* at 1365. The Court of International Trade rejected this argument, explaining that regardless of what the administrative record contained, "the Final Rule gave notice to interested parties that Customs had reached a decision on the type or types of interest it would . . . distribute to [affected domestic producers]." *Id.* at 1366.

Finally, the Court of International Trade issued its June 2022 decisions denying plaintiffs' motions for judgment on the agency record and entering judgment for the government. *Adee Final Decision* at 1299; *Hilex Poly Co. v. United States*, 581 F. Supp. 3d 1319, 1331 (Ct. Int'l Trade 2022); *Am. Drew v. United States*, 579 F. Supp. 3d 1372, 1384 (Ct. Int'l Trade 2022). In these decisions, the court adopted the agency's interpretation of the CDSOA and held that the statute did not require Customs to distribute delinquency interest. *Adee Final Decision* at 1298–99. The Court of International Trade accordingly denied plaintiffs' motions, concluding that they had not demonstrated that

they were entitled to delinquency interest in their distributions. *Id.* at 1288, 1299.

Appellants timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## II. STANDARD OF REVIEW

"When reviewing a Court of International Trade decision in an action initiated under 28 U.S.C. § 1581(i), this court applies the standard of review set forth in 5 U.S.C. § 706." *PS Chez Sidney, L.L.C. v. U.S. Int'l Trade Comm'n*, 684 F.3d 1374, 1379 (Fed. Cir. 2012). "Accordingly, we review questions of law, including the interpretation of statutory provisions, to determine whether agency actions or conclusions are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* (quoting 5 U.S.C. § 706).

## III. DISCUSSION

Before this court, Appellants argue the Court of International Trade erred by dismissing claims for distributions received more than two years before filing suit. *Adee* Appellant's Br. 46; *see also id.* at 47–49; *Hilex* Appellants' Br. 63; *see also id.* at 64–71.[6] Appellants also assert that the CDSOA requires Customs to include delinquency interest in its distributions to producers. *Adee* Appellant's Br. 16–17; *see also id.* at 18–29; *Hilex* Appellants' Br. 27; *see also id.* at 28–44. As explained below, we disagree.

### A.

To avoid a time bar, an action under 28 U.S.C. § 1581(i) must be brought "within two years after the cause of action

---

[6]    "*Adee* Appellant's Brief" refers to the opening brief filed in *Adee*, No. 22-2105, and "*Hilex* Appellants' Brief" refers to the opening brief filed in *Hilex*, No. 22-2106. We follow the same naming convention for other briefs.

first accrues." 28 U.S.C. § 2636(i). A claim accrues when suit can be filed. *See SKF USA, Inc. v. U.S. Customs & Border Prot.*, 556 F.3d 1337, 1348 (Fed. Cir. 2009). However, "a claim does not accrue until the aggrieved party reasonably should have known about the existence of the claim." *St. Paul Fire & Marine Ins. Co. v. United States*, 959 F.2d 960, 964 (Fed. Cir. 1992). Here, Appellants assert that they could not have known about Customs' decision to exclude delinquency interest until over a decade after the Final Rule was promulgated because neither the Rule nor its annual CDSOA reports provided notice of Customs' decision to exclude delinquency interest. *Adee* Appellant's Br. 47–49; *Hilex* Appellants' Br. 63–65. Because the Court of International Trade properly found that the Final Rule gave adequate notice of Customs' decision, we conclude that the Court of International Trade did not err by dismissing the claims outside the two-year statutory period as untimely.

Customs communicated its decision regarding the exclusion of delinquency interest both in the operative text of the Final Rule and in the preamble. First, the operative text explains that "funds in [special accounts] are not interest-bearing unless specified by Congress. . . . Therefore, no interest will accrue in these accounts. However, statutory interest charged on antidumping and countervailing duties at liquidation will be transferred to the Special Account, when collected from the importer." 19 C.F.R. § 159.64. The express inclusion of "interest charged . . . at liquidation" in CDSOA distributions implies the exclusion of delinquency interest—which is charged after liquidation. *See United States v. Vonn*, 535 U.S. 55, 65 (2002) (recognizing the principle that "expressing one item of a commonly associated group or series excludes another left unmentioned"). The preamble to the Rule specifically states that "only interest charged on antidumping and countervailing duty funds themselves, pursuant to the express authority in 19 U.S.C. [§] 1677g, will be transferred

to the special accounts and be made available for distribution under the CDSOA." Final Rule, 66 Fed. Reg. at 48550.

Appellants argue that the only portion of the September 2001 Final Rule that could possibly provide notice of Customs' decision is the preamble, and this statement—in context—does not provide adequate notice. *See Adee* Appellant's Br. 47–48; *Hilex* Appellants' Br. 67–68. Appellants contend that the text of the preamble appears in response to comments suggesting that clearing and special accounts "establishe[d] under the CDSOA should be interest-bearing accounts"—"an entirely different subject." *Hilex* Appellants' Br. 68 (first citing Final Rule, 66 Fed. Reg. at 48550); *Adee* Appellant's Br. 47–48. Hilex likens this case to *MCI Telecomms. Corp. v. F.C.C.*, 57 F.3d 1136 (D.C. Cir. 1995), in which the D.C. Circuit held the agency failed to provide adequate notice in a proposed rulemaking where it had communicated a policy change only "in the background section of the proposed rule via a footnote appended to a paragraph about a different topic." *Hilex* Appellants' Br. 68–70 (citing *MCI*, 57 F.3d at 1142).

These arguments are unpersuasive. The explanatory text in the preamble appears in the main text in the only section of the preamble addressing the distribution of interest and plays a supporting role to the operative text. Unlike in *MCI*, the relevant text is not in a footnote to a paragraph about a different topic. *See MCI*, 57 F.3d at 1142 (noting the agency "could hardly have done a better job" of "hid[ing] in the most unlikely place its 'notice'"). This case also differs from *MCI* because both the preamble and the operative text communicate Customs' decision regarding the exclusion of delinquency interest from distribution. *See Hillsborough Cnty., Fla. v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 718 (1985) (noting agencies "can speak through a variety of means, including regulations, preambles, interpretive statements, and responses to comments"). Although the relevant preamble text appears in response to another interest-related question, a party

affected by the decision "reasonably should have known" about Customs' decision by reading the preamble in conjunction with the operative text. *St. Paul Fire*, 959 F.2d at 964. Together, the preamble and operative text give adequate notice.

Appellants also assert that the Final Rule could not have provided adequate notice because it did not reflect the agency's change in position between the Proposed and Final Rule. *Adee* Appellant's Br. 40–41; *Hilex* Appellants' Br. 66–67. Specifically, Appellants argue that Customs had originally planned to distribute delinquency interest, *Adee* Appellant's Br. 40–41 (citing J.A. 4187–88), then changed its mind, *id.* at 41; *see also id.* at 14 (citing J.A. 4256). *See Hilex* Appellants' Br. 66–67. Appellants assert that the small changes in language between the Proposed and Final Rule[7] were insufficient to document this change. *See id.* We disagree.

The record merely establishes that Customs "*consider[ed]* possible methods" for the distribution of delinquency interest. *See* J.A. 4188 (emphasis added).[8] Considering how the agency could distribute delinquency interest does not mean the agency had decided it would. Thus, the record does not establish that Customs had decided to distribute delinquency interest and communicated this decision in the Proposed Rule. Nor does the administrative record change what the Final Rule communicates: only § 1677g interest was to be distributed. The continuity

---

[7] The operative text of the Proposed Rule was nearly identical to the Final Rule. *Compare* Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers, 66 Fed. Reg. 33920, 33926 ("Proposed Rule"), *with* Final Rule, 66 Fed. Reg. at 48554.

[8] "1505 interest" in the underlying record refers to delinquency interest, which is charged under 19 U.S.C. § 1505(d).

between the Proposed and Final Rule indicates Customs never changed this public position.

We hold that the Final Rule provided adequate notice. Therefore, we conclude the Court of International Trade did not err by dismissing the claims outside the two-year statutory period as untimely.

### B.

Next, we turn to whether the CDSOA requires Customs to distribute delinquency interest to affected producers. Appellants argue that the Court of International Trade erred because the statute unambiguously requires the distribution of delinquency interest. *See Adee* Appellant's Br. 16–17, 31; *Hilex* Appellants' Br. 27, 45. We hold that—after resorting to the traditional tools of statutory interpretation—the CDSOA unambiguously excludes delinquency interest from distribution, and we affirm accordingly. *See Loper Bright Enters. v. Raimondo*, 603 U.S. ___, ___ (2024) (slip op. at 23) ("[C]ourts use every tool at their disposal to determine the best reading of the statute and resolve [any] ambiguity.").

We begin our analysis with the text of the CDSOA. *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1055–56 (2019). Our analysis focuses on two key statutory sections: § 1675c(e)(2) and § 1675c(d)(3). 19 U.S.C. § 1675c(e)(2), (d)(3). We discuss each section in turn.

Section 1675c(e)(2) directs Customs to deposit into each special account "all antidumping or countervailing duties (including interest *earned on* such duties) that are *assessed . . . under* the antidumping order or finding or the countervailing duty order with respect to which the account was established." *Id.* § 1675c(e)(2) (emphasis added). The placement of the parenthetical and the word "including" explain that the term "duties"—as used in the provision—encompasses "interest." *Chickasaw Nation v. United States*, 534 U.S. 84, 89 (2001) ("To 'include' is to 'contain' or

'comprise as part of a whole.'") (citation omitted). There-
fore, the phrase "that *are assessed . . . under* the antidump-
ing order or finding or the countervailing duty order"
applies to both the "duties" and "interest earned on such
duties."[9] *Id.* § 1675c(e)(2) (emphasis added). The statute
also states that only duties and interest "earned on" these
duties are deposited into special accounts for distribution.
Accordingly, only interest that is "earned on" antidumping
or countervailing duties *and* "assessed under" the associ-
ated antidumping order or finding or countervailing duty
order is deposited into the special accounts under
§ 1675c(e)(2). The only remaining question is what types
of interest are "earned on" antidumping or countervailing
duties and "assessed under" antidumping or countervailing
duty orders, and whether they include delinquency inter-
est.

To understand what types of interest fit these criteria,
we look to other provisions of the Tariff Act at the time the
CDSOA was enacted. *See United Sav. Ass'n of Tex. v. Tim-
bers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988)
(explaining that a provision ambiguous in isolation may be
clarified by the remainder of the statutory scheme). The
statutory scheme shows that only § 1677g interest, not de-
linquency interest, meets these criteria.

Section 1677g interest is uniquely associated with an-
tidumping and countervailing duties. Section 1677g inter-
est is paid on the difference between estimated
antidumping or countervailing duties deposited and duties
finally assessed and owed under an antidumping or coun-
tervailing duty order. *Timken Co. v. United States*, 37 F.3d

---

[9]    We reject the assertion that the phrase "are as-
sessed . . . under" does not apply to "interest" because the
subject of the sentence must be the plural "duties." *See
Adee* Appellant's Reply Br. 10. Because "duties" includes
"interest," the plural phrase properly applies to both.

1470, 1474 (Fed. Cir. 1994); *see* 19 U.S.C. §§ 1677g, 1671f(b), 1673f(b). Thus, it is "earned on" duties "assessed under" an antidumping order or finding or countervailing duty order. Section 1677g interest begins to accrue only after the "publication of a countervailing or antidumping duty order" or "finding under the Antidumping Act, 1921." 19 U.S.C. § 1677g. Thus, § 1677g interest can also said to be "assessed under" an antidumping order or finding or countervailing duty order.

Delinquency interest fits very differently into the statutory scheme and is not assessed under an antidumping or countervailing duty order. Unlike § 1677g interest, delinquency interest is not specifically associated with antidumping or countervailing duties and appears under a general provision of the Tariff Act applying broadly to "duties, fees, and interest." *See* 19 U.S.C. § 1505(d). Delinquency interest is only assessed and charged after the final assessment of duties and thus is not part of the assessment of any antidumping or countervailing duties. *Compare United States v. Am. Home Assurance Co.*, 857 F.3d 1329, 1337 (Fed. Cir. 2017) ("[Section] 1505(d) interest must inherently be assessed after liquidation . . . ."), *with Norsk Hydro Can., Inc. v. U.S.*, 472 F.3d 1347, 1359–60 (Fed. Cir. 2006) (explaining that the assessment of countervailing duties occurs at liquidation). Any delinquency interest charged is assessed under this general provision of the Tariff Act, not under an antidumping order or finding or countervailing duty order.

The other key CDSOA provision, § 1675c(d)(3), follows a similar structure, instructing Customs to "distribute all funds (including all interest earned on the funds) from assessed duties received in the preceding fiscal year to affected domestic producers . . . ." 19 U.S.C. § 1675c(d)(3). Generally, "funds" are defined as "available pecuniary resources." *Webster's Third New International Dictionary of the English Language* 921 (3d ed. 2002); *see also Bayer AG v. Housey Pharms., Inc.*, 340 F.3d 1367, 1371 (Fed. Cir.

2003) ("Dictionaries of the English language provide the or-
dinary meaning of words used in statutes."). Under the
CDSOA, the only sources of "funds" for each special account
are deposits made under § 1675c(e)(2). Thus, in the context
of the statute, "funds . . . from assessed duties" refers to
what is deposited in each special account under
§ 1675c(e)(2). *See* 19 U.S.C. § 1675c(e)(3) (referring to the
"distribution of the funds in a special account"); *Adee* Oral
Arg. at 4:50–5:24, https://oralarguments.cafc.uscourts.gov/
default.aspx?fl=22-2105_12052023.mp3 (Appellant con-
ceding "funds" in § 1675c(d)(3) and "duties" deposited un-
der § 1675c(e)(2) are the same corpus, based on the text of
§ 1675c(e)(3)).

The parenthetical then explains that these funds in-
clude all the associated interest received and deposited un-
der § 1675c(e)(2), but no other interest. As explained
earlier, the use of a parenthetical and the word "including"
indicate that "all interest earned on the funds" is part of
the "funds" to be distributed. *See Chickasaw Nation*, 534
U.S. at 89. Here, both must also come from "assessed du-
ties received in the preceding fiscal year." 19 U.S.C.
§ 1675c(d)(3). The parenthetical does not expand the scope
of funds to be distributed; rather, "that which is within [the
parentheses] is meant simply to be illustrative, hence re-
dundant." *Chickasaw Nation*, 534 U.S. at 89. In context,
§ 1675c(d)(3) therefore directs Customs to distribute a sub-
set of funds deposited in the special accounts—funds "re-
ceived in the preceding fiscal year." It does not include any
additional interest that is not deposited under
§ 1675c(e)(2).[10]

---

[10]   Hilex asserts that reading § 1675c(e)(2) before
§ 1675c(d)(3) improperly "disregard[s] the sequential order
of statutory provisions." *Hilex* Appellants' Br. 38. Regard-
less of the order in which the provisions are read,

Appellants argue the modifier "all" in § 1675c(d)(3) undercuts this statutory interpretation. *See* 19 U.S.C. § 1675c(d)(3) ("*all* interest earned on the funds") (emphasis added); *Adee* Appellant's Br. 22–23; *Hilex* Appellants' Br. 42–43. Hilex asserts that "'all interest' in fact means . . . all interest"—that is, including delinquency interest. *Hilex* Appellants' Br. 63. However, "a statute's meaning does not always turn solely on the broadest imaginable definitions of its component words. Linguistic and statutory context also matter." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018) (internal quotation marks and citation omitted). The context—placement after the word "including" inside the parenthetical—cabins the meaning of "all interest" to interest deposited under § 1675c(e)(2).

Appellants are also incorrect that such a construction "effectively read[s] the word 'all' out of the CDSOA." *Adee* Appellant's Br. 23; *see Hilex* Appellants' Br. 40. Section 1677g provides that interest be charged to importers on underpayment of duties finally owed, while interest is to be paid to importers when they overpay with their estimated deposit. 19 U.S.C. § 1677g(a). The use of the phrase "all interest" is best understood as a command that Customs should distribute the entirety of the interest it collects from importers for underpayments, without deducting the interest it pays to importers for overpayments.[11] *See Life Techs.*

---

§ 1675c(e)(2) provides important context that helps define "funds" in § 1675c(d)(3).

[11] In the Final Rule, Customs adopted this interpretation, noting that the payment of interest to importers for overpayment "is not a part of, and therefore does not reduce, the computation of the continued dumping and subsidy offset [to be distributed]." 66 Fed. Reg. at 48550. The CDSOA's Congressional sponsors specifically lauded Customs for this interpretation, stating that "any other

*Corp. v. Promega Corp.*, 580 U.S. 140, 146 (2017) ("'All' means the entire quantity . . . ."). Thus, "all" does not mean "all types of interest" or require the inclusion of delinquency interest, and the Court of International Trade's interpretation does not read "all" interest out of the statute.

The text and structure of the CDSOA and the broader Tariff Act show that delinquency interest is excluded from distributions under the CDSOA. Because the text yields a clear answer, we need not consider legislative history. *Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011) ("Legislative history, for those who take it into account, is meant to clear up ambiguity, not create it."). Even if we were to take legislative history into account, it does not contradict the interpretation based on the statutory text and structure. The legislative history Appellants cite speaks only to the general purpose of the statute and does not mention interest at all. *See Adee* Appellant's Br. 30 (first citing 145 CONG. REC. S497 (daily ed. Jan. 19, 1999) (statement of Sen. DeWine); then citing CONG. REC. H9708 (daily ed. Oct. 11, 2000) (statement of Rep. Johnson); and then citing 146 CONG. REC. S10697 (daily ed. Oct. 18, 2000) (statement of Sen. Byrd)); *Hilex* Appellants' Br. 12–13 (citing same). These statements regarding the overarching goals of the CDSOA "are too general to provide much support for [Appellants'] reading of the [disputed] terms" and "do little to bolster their argument on the narrow question presented here." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 303 (2006). Accordingly, they do not lead us to question the unambiguous meaning of the statute.

Appellants and the government also assert their preferred interpretation is supported by the subsequent enactment of the Trade Facilitation and Trade Enforcement Act

───────────────

construction of the Act would significantly undermine its purpose." J.A. 4068.

of 2015 ("TFTEA"), Pub. L. No. 114-125, § 605, 130 Stat. 122, 187–88 (codified at 19 U.S.C. § 4401). *Adee* Appellant's Br. 30 n.7; *Hilex* Appellants' Br. 19–20; *Adee* Appellees' Br. 34–35, 38, 40. The TFTEA expressly provides that delinquency interest paid by sureties after October 1, 2014 must be distributed via the CDSOA. 19 U.S.C. § 4401(c). The fact that the Tariff Act as amended by the TFTEA expressly provides for the distribution of some delinquency interest implies that other delinquency interest is not to be included. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 467 (2001) ("We have therefore refused to find implicit in ambiguous sections of the [statute] an authorization to consider costs that has elsewhere, and so often, been expressly granted."). It also provides some limited evidence that the prior version of the Tariff Act did not already provide for the allocation of delinquency interest.

On the other hand, Appellants cite evidence in the Congressional record that Congress enacted the TFTEA to partially correct what it saw as Customs' failure to follow the direction of the CDSOA to distribute all interest. *See Hilex* Appellants' Br. 19–20 (citing 162 Cong. Rec. S843 (daily ed. Feb 11, 2016) (statement of Sen. Thune) (explaining that the TFTEA was enacted to "correct[ Customs'] misreading of the law")). But this kind of "[p]ost-enactment legislative history . . . is not a legitimate tool of statutory interpretation. . . . Permitting the legislative history of subsequent [ ] legislation to alter the meaning of a statute would set a dangerous precedent." *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011). For the reasons above, the TFTEA does not lead us to deviate from our interpretation of the CDSOA.

In sum, the CDSOA unambiguously excludes delinquency interest from distribution to affected producers.

## IV. Conclusion

We have considered Appellants' remaining arguments, and we do not find them persuasive. For the above reasons,

ADEE HONEY FARMS v. US                                    21

we affirm the Court of International Trade's partial dismis-
sal and entry of judgment for the government.  Appellants'
claims for distributions predating their complaints by more
than two years are time barred, and all of Appellants'
claims fail because the statute unambiguously supports
Customs' practice of excluding delinquency interest.

**AFFIRMED**